I'd like to focus my remarks this morning on the Batson issue and the court's error in denying appellants' challenge. I think it's necessary to examine the Muad'Dahar proceedings in sequence in order to understand why the court failed in its affirmative duty to conduct an adequate third stage Batson inquiry. I would start with the threshold fact, of course, is that Mrs. Herbert, the challenge juror, was a prime or model prosecution juror. She was married with children, a computer scientist. She had a working spouse, previous jury experience on a criminal jury that had convicted somebody of assault with a deadly weapon, and she'd been a victim of a prior armed robbery. Juror Rivera, the other juror in question here, was excused for cause, as the court will recall, because she'd worked on, she had some distrust of law enforcement testimony. The government came after that. The government requested additional Muad'Dahar based on two observations that the prosecutor made. Number one, he walked into the jury room. He had seen what Herbert and Rivera discussed. Excuse me? He walked into the witness room. You called it a jury room. Oh, I'm sorry. He walked into the witness room. Which was it? I thought it was the jury room. Okay. Well, there's a big difference. Wasn't there the witness room? I'm not sure. I'm just asking a factual question. Right. Because my impression of it was the jury room. Manolo said he had the right to be there. Well, he had the right to be there. I'm not contesting that he didn't have the right to be there. Well, that's, I mean, that's an important distinction, I think. In any event, he walked in and saw these two women conversing, and when he walked in, he said to the court, I realized they were jurors. I immediately turned around to leave, and I heard Mrs. Herbert say he should not be here. Those were his concerns. He asked the court to inquire further, and the court did inquire further. And he asked, and the court asked Mrs. Herbert what, you know, what had happened, and whether Revere had shared with her any of her feelings regarding her previous admissions during the Bois D'Arts. And Mrs. Herbert unequivocally said no. We just met. Whether Herbert had gotten anything about Revere's feelings, she said no. She did admit seeing the prosecutor enter the room. At that point, the court ended its inquiry, asked either party if they wanted to ask further questions, and either party did, and the prosecutor exercised its peremptory challenge, the defense made a Batson challenge, and the court asked the prosecutor for its reasons. So the prosecutor then reiterated its first reason, that they were conversing. Well, that reason was discredited completely. The woman said, no way. We had just met. There was no discussion of any of that stuff. And as for the second claimed reason that the prosecutor was concerned, the prosecutor said for the first time at this point, he mentioned hostility. That her comment, he is not supposed to be here, was accompanied by a hostile look. No, he said that the statement was hostile and that there was a look. I think the important thing, you're right, I believe you are right. Step back. If I walk into a witness room, and I'm really curious about this, I walk in, whether you're defense counsel or you're a prosecutor, and the juror is talking to another juror and says, he's not supposed to be here, would you consider that a hostile comment? Not necessarily, Your Honor. Would you consider it a concern that you may have created a bad impression with that juror? I would consider it some concern, and he brought it up as his concern. Okay. Now, let's assume. Take the fact that they were conversing, and the juror with whom she was conversing may have poisoned the well. Just assume that all that happened in this case was the prosecutor walked in and got that comment, or the defense counsel for that matter, and the counsel became concerned that he had created a bad impression with that juror. How would you, as that counsel, broach the issue with the juror to resolve that concern? As counsel in supplemental court arbitration? Yeah, whether you're defense or prosecutor. You mean what questions would I have asked the juror? Yeah, because he said he didn't feel comfortable asking. Yeah, he did, and that's where I think the court needed to step in and ask some questions. You know, when you said that, how did you feel? Do you have any feelings of distrust or animosity about the prosecution? I mean, that's where the court failed. And if the juror says no, is he bound by that? Well, in this case, this is a particularly unusual case in that generally during voir dire proceedings, the court is privy to the demeanor of the prosecutor and the juror. And so it's easier to defer to a court's findings under those circumstances where the court can see everything that's going on. In this case, you don't have that. The court was not privy to what went on. Not to what went on, but isn't the court privy to? That's a fair point. I mean, that's an important point. But if you walk through the sequence, the judge has the juror in front of her. She has the prosecutor in front of her. She's hearing his account. She knows what the issue is. Can she not evaluate the demeanor and the credibility of what's going on, at least in before her, and make some judgments about that? I don't think as it was left. I think it was aborted fairly too quickly, the inquiry. Let's suppose Mrs. Hebert's facial expressions or body language gave the judge reason to disbelieve her testimony. What do we do? Well, they never ask her the question. No. Now, jumping back to the first question, did she share her concerns about law enforcement? Mrs. Hebert says no. What if Judge Manala didn't buy that based on body language? Well, then we're forced to speculate entirely in this case. And without having the court having to be privy to or actually to observing the juror throughout the vanguard, we don't have any of that in this record. Well, there are demeanor and all of that that triggers the event is in the courtroom, but let's suppose this happened in the hallway or, you know, whatever. It might well occur in some cases. Is there any requirement that if resolving the act and the, as happened here, the concern and then the direct question and answer which said, no, we didn't talk about it, no, I didn't do this, no, whatever the response is, and there's no follow-up question, but the judge concludes based on what she's seen before her that she can't accept that answer as fully accurate. Is there any obligation of the court to put that on the record in some fashion so we as an appellate court know that that's what she relied on or that she should say that that's what she's done? The court has an affirmative duty to conduct an adequate third step, that's an inquiry, and the limits or the scope of that inquiry, of course, can only be defined on a case-by-case basis. Considering all the facts in this case, the court not being there during this incident and given the juror's response to the first question, which seems to debunk, have debunked the prosecutor's concern, it seems to me when you get to this other question, this comment, that some additional inquiry was necessary, needed to be made for the court. The court accepted the prosecutor's allegations. And that's what's troubling about this case. Indisputable. As you say, we're left to speculate about why the judge, A, didn't ask a follow-up question, and B, in light of her denial that she'd been influenced or had talked about this subject, we're left at this stage to assume that the judge saw something that caused her to discount the denial about the conversation and to accept the characterization of the he-shouldn't-be-here comment as sufficiently troublesome to justify the prosecutor's strike. Now, the case law that one looks to continuously talks about our deferring to the district judge who has the opportunity to observe demeanor. I don't see any. I haven't found any case. My research hasn't been exhausted. It says if that's the basis, ultimately, for resolving this conversation, they've had a sidebar. I haven't seen any authority that says she has to put that on the record and say, well, I heard what she said, but I don't buy it. It might be nice if that were the law, but are you aware of any authority that says she would have to do that? No, I don't think there's any authority that actually explains the scope of the court's affirmative duty under any particular situation. I was troubled by the fact that the court accepted the, even after what happened happened, that the court accepted the prosecutor's reasons as indisputable when, for sure, the fact that they were conversing and maybe there was some poisoning going on, she categorically denied it and said they just met, which to me is a reasonable response. I mean, as a reasonable inference, two people having just met and sat down, it's hard for me to understand how one person's world view or political leaning could be, she could channel that into the other person within a few minutes. You said that the district judge should have asked other questions. What other questions should the district judge have asked? I think the district judge should have said, do you remember making that statement, Mr. Silverberg, and how did you feel? Did you feel he was in the wrong place? Did you feel he was doing something wrong? Do you have any feelings about the prosecutor because of that? Do you have any negative feelings? Mr. Brannan, is there a danger that if the district judge asks those kinds of questions, that even where there was not hostility before, that a juror, a potential juror, might become hostile because she might have felt in some way that the prosecutor had impugned her integrity or her honor by making these accusations, so that even the very act of questioning might turn her head in a way that she wasn't disposed before? I think the chances of that happening are much more likely if the government prosecutor  And I think that's why it was important in this particular case for the court to actually step in at that point as the neutral element in the courtroom and ask those questions, so that there wouldn't be that kind of transference. Mr. Brannan, if this had been your peremptory strike, the same standard, the same legal standard would apply, wouldn't it, to that kind of an inquiry? In other words, the Batson standard applies to both the defense counsel and the prosecution now under Supreme Court precedent, is that correct? That's correct. So that if you had had an impression that a juror had given you a, made a hostile statement to you, a question of tone and a voice which is very difficult to reproduce, and this had been done outside the presence of anybody else, so it was you sticking your head into a room where you had a right to be, and a juror, a potential juror giving you a hostile, making some kind of hostile statement and giving you a look, again, difficult to reproduce, but it created an impression in you, as defense counsel you would be held to the same standards, so that if in the future you were to challenge a juror on those grounds, you'd exercise a peremptory strike, and then the district court were to come back and conduct this inquiry. We would have a district court, in matters of your honor, as a defense counsel might be at stake, wouldn't you? Absolutely. I think it's also troubling that the prosecutor didn't mention the word hostility or hostile look initially. Isn't that the first thing you would have said if you were concerned about a juror, and you stopped the whole proceedings and said to the court, listen, I'm really concerned about this. I want further voir dire. Wouldn't you have said right away, I got a hostile feeling from this juror? Wouldn't that have been the first thing out of your mouth? It would have been the first thing out of my mouth. This was an afterthought. The government prosecutor didn't even mention this until he was asked to give his reasons. He did not mention it when he initially expressed his concerns to the court. I find that significant. I find that significant, especially when, you know, the first reason having been debunked, and then you look at the second reason, and you find out that the word hostile, which is a red flag, a huge red flag, is not mentioned during the initial discussion. I think that is more suspect. And given what Mrs. Herbert said with regard to her conversation with Ms. Rivera, nothing had been exchanged. What he said was, just if I may, just because I want to make sure, you said the sequence is important, and I agree with you. It is very important. I'm reading from ER 152, 153. The first concern, this is the prosecutor, the first concern I had was the communication with the other juror, Mrs. Glenn Rivera. The second concern that I had was the statement that was made to me, which was he shouldn't be in here. It was hostile, and there was a look. Now, you're saying that's quite a significant hostile characterization on it, but he was characterizing the statement. And it seems to me that a look, if he had characterized the look as being hostile, which I gather it may have been, but it seems to me what Judge Minnell was picking up on was the statement. He is not supposed to be in here, is fairly characterized, I think, as hostile. Wouldn't you agree with that? I mean, it's certainly a critical statement. It's not something you, as a defense or prosecutor, would like to have a juror leveling at you if you're looking for an unbiased jury. You may want it clarified, but wouldn't it raise a concern? Oh, it does, yeah. And the court, in this situation, our contention is the court needed to go beyond what it did in order to clarify this. I don't think that it's clear from this record whether he actually saw the look. The way I read it, he walked into the jury room immediately, or the witness room, sorry, immediately recognized that these were jurors, turned around to leave, which was a completely appropriate thing for him to do. And then he said he heard this woman make the remark. It's not clear to me that he even saw her expression. But he just heard what she said. I'm going to cut you off a little bit. I invite you to save some time for rebuttal. I think you may want to respond to whatever the government argues. May it please the Court. Eric Silber on behalf of the United States. As the Supreme Court held in Hernandez, the heart of the Batson inquiry turns on the credibility of the prosecutor. And the credibility of the prosecutor, in turn, the best evidence of that, is typically the demeanor of the prosecutor, which is uniquely, the district court is uniquely in a position to observe. Here, the district court did observe the demeanor of the prosecutor when he made this challenge. The district court did find the prosecutor credible, and did find that the peremptory challenge was not based upon race. And this Court should affirm that decision. Now, turning first to the reason that was actually given for exercising the peremptory challenge. And there really only was one reason given. The prosecutor mentioned two concerns, but one reason that actually prompted the challenge. And that was the statement that Ms. Herbert made to Ms. Rivera when the prosecutor entered, and it is the witness room, it is not the jury room, at Government's Excerpt of Record 149. It does clearly indicate that it's the witness room that this is taking place in. And as Judge Fisher noted, the district judge expressly commented on that, that the prosecutor had a right to go into the witness room. And so the focus of the government's peremptory challenge here was a statement by Ms. And I would like to point out first that it's undisputed that that statement was made. It was never challenged below. It's never been challenged on appeal that that statement was in fact made. And the district court in ruling on this issue noted it was ruling on an essentially undisputed factual record. Now, second, the statement was mentioned to the district court prior to the exercise of the peremptory challenge, and prior to the Batson inquiry. And as the Supreme Court has held in Hernandez, and this court has followed in Contreras-Contreras, that is a factor that the court can consider in determination. It makes the prog more credible. Now, here the prosecutor explained that the state of the case, if I am set out to get rid of a juror, and I decide to escalate or manufacture even worse, although I wouldn't suggest that. I think U.S. attorneys would do that. But just take, say, for the generalizations, as we've talked about, this applies to defense as well as to prosecutors. Let's suppose that a counsel for either side decides they really want to get rid of a juror because they don't want an African-American on this jury. And so he sees, spots him talking down the hallway and says, ah-ha. So he comes in. There's actually no such conversation took place. So he comes in, and they were talking, but there was no statement about why is he here or anything like that. This is all hypothetical. And so the prosecutor or the defense counsel comes in and says, I have a concern about Ms. Hebert. I want to, this is what happened. And the court goes through the process that has just occurred. Now, why should that weigh in this case? If he's manufactured that where in the record is there that anything corroborates that the statement, you say it's not disputed, but that that statement ever occurred.  All she acknowledged was she was talking to the excused juror and saw the prosecutor. Well, I think what's important to note in this court's decision, and Chanko, at least, made clear that it's up to the defense counsel to raise concerns regarding these issues in the district court. A counsel wanted to challenge whether, in fact, the statement was made. The time to do it was in the district court. That I accept, but I'm trying to understand because I'm just trying to noodle this through. It's a very difficult and sensitive issue as to why the fact that counsel raises it before they go should carry much weight. Well, I mean, I think it carries. Because the presumption in this case is we're trying to ferret out a race-based deceptive intent here. We're trying to find out whether race neutral and whether it's pretext. And if I'm devious enough to want to get rid of somebody because of race knowing Batson, then why wouldn't I engineer it so that I'm laying all the right foundations? So, I mean, it seems raising it before you make the challenge, I just don't know how much to weigh that in. I understand it's been referenced, but I'm having trouble understanding why we should give it much weight at all. Well, I mean, I think it is entitled to some weight. Because at the time a statement is made, if there's no Batson challenge, you wouldn't necessarily know that there is going to be one. And it is some consideration for the district court to weigh. Now, in the situation you've given in which someone is acting deviously, presumably other evidence would come into play which would indicate that devious intention. And the court would, in that circumstance, be able to say, well, I recognize that this was mentioned beforehand, but the other evidence in this case leads to the conclusion that this is not credible. And that's really not what took place in this case. No, I wasn't suggesting it did. No, I mean, I think it's simply some evidence for the court to consider. And I do think both the Supreme Court and this Court has indicated it is some evidence the district court can consider. And here the district court did consider this evidence. I do think it's important to look at the statement that was actually made. He's not supposed to be in here. As Judge Fischer has indicated, that, at least to a prosecutor, is an inherently hostile statement on its face. A prosecutor's ability to convince 12 jurors beyond a reasonable doubt muters credibility. And as the district court mentioned, that statement suggested wrongdoing on behalf of the prosecutor. And perceived bias is a well-accepted basis for exercising parametric challenges. In fact, it's probably the most accepted basis for exercising parametric challenges. In Angani, this court indicated that it doesn't even matter if it's a real perceived bias. It can be imagined. It's enough that that's the reason. And I think the defendant here has never challenged that perceived bias is itself an improper reason. He raises other challenges. And I also want to note that the prosecutor mentioned there was a look associated with this. And I think it is inherently the type of statement that would be associated with a look. It's certainly not implausible that it would be. And the district court made a credibility finding here. So that's the evidence the district court had before it. And, again, it made a credibility finding. And I want to turn to the arguments the defendant made in the district court first. Because I think that's really the most important inquiry. In United States v. Thompson, this court reversed the district court for holding an ex-party Bassett hearing precisely because the defendant needs to be present to raise the concerns that he has and to develop the factual record. And in Chenko, which was really the flip side of that case, this court held that when the defendant does do that, it's really not proper to look at those arguments on appeal. So I think it's important to look at what was actually raised in the district court. And the only evidence of pretext offered in the district court was that the prosecutor didn't ask questions about the look and did not ask questions about what happened after he left the witness room. Now, first, I note that the prosecutor did explain why he didn't ask those questions. He said he was uncomfortable doing so. And he raised that concern prior to defense counsel bringing up this issue about asking the questions. And it's important to note in Ongani, this court indicated that bare questioning can provoke resentment. I mean, that is an accepted basis for not asking further questions. Setting aside that the prosecutor actually offered an explanation here, and it's an explanation that the district court found credible, look at what the questions were trying to get at, which is whether this prospective juror was actually hostile, as opposed to whether the prosecutor merely perceived her to be hostile. And that's really not the proper inquiry under a Batson analysis. If a juror is actually hostile, that's a for-cause challenge. It's perceived hostility, which serves as the basis for a peremptory challenge. And as the Supreme Court noted in Batson itself, a peremptory challenge need not rise to the level of for-cause challenge. It simply doesn't. These questions are really irrelevant to the determination that was before the district court, which was whether the prosecutor was credible in perceiving hostility. And the district court reached the proper conclusion about that. Now, let's revisit that a little. There are some cases where this court and other courts have gone through the laundry list or the list of reasons proffered and looked to the record and said, that's what you say here, but it's impeached by the record, and this is part of a defendant's argument here. A prime reason is whether it was one reason to two grounds. It was important to the prosecutor at the time that he had seen her talking to this excused juror. And so on that ground, at least, the district court did ask direct questions. And the response was, no, we didn't talk about this case. She didn't share anything. So now the record is that a concern expressed by the prosecutor has been specifically addressed by the district court, and the juror has denied it. And that's not, in that context, involving the prosecutor at all. It's simply saying, did you talk about X? And she says, no, we didn't talk about X. So now the record affirmatively shows only that they didn't talk about it. Nesmanella didn't buy that. And notwithstanding the affirmative negation, if you will, of the prosecutor's concern on that point, if that had been the only issue here, would that still be enough? Because we would have to simply say, well, even though the juror denied it, the judge found otherwise, so she must have made a credibility determination, and so we have to defer to it. Well, let me start with, I don't think that that's really what happened here. No, I'm not saying it's exactly what happened. I'm trying to parse this a little bit to see where this moves beyond deference and where we have to have some assurance that there was some objective reason here to sustain the prosecutor's concern. Well, I think first to look at what happened, I think at the initial questioning, the reason that the initial questioning was done was to determine if there was a basis for a four-cause challenge as opposed to peremptory. I mean, if the two of them had talked about Ms. Rivera's hostility to the government, I think that would have served as a basis as a four-cause challenge in this case, because her hostility was pretty clear in the record, and she made some pretty strong statements, particularly about what she perceived to be infiltrators who lied during the case that she was involved with. This is the excused juror. This is the excused juror, and it's important to note that this case, a really important part of it was the testimony of cooperating witnesses. So I think the initial questioning simply went to the fact of whether the two of them had discussed and there was a basis of a four-cause challenge. I think the concern that was mentioned during the Batson challenge was simply the concern that the two of them had been talking together. And as the district court found, the prosecutor was uncomfortable that the two of them had been talking, and the district court indicated that it found that reason to be reasonable, that it was uncomfortable that the two of them were having discussions given Ms. Rivera's hostility. And it's important to note Ms. Rivera explained her hostility to the entire jury panel during the proceedings, and the government was simply uncomfortable because the two of them had been conversing. So I don't think. So yours then is regardless of the statement about the prosecutor shouldn't be in the witness room, it would have been enough that this excused hostile juror was talking to another juror, that would have been enough to defeat a Batson challenge, even though being called up and being asked the direct question whether they talked about the case or her feelings, on the record she denied it. I think it's important because the prosecutor there is not saying I'm exercising this challenge because they talked about the case when they were alone together. I'm simply uncomfortable that this person was spending time with a juror who expressed on the record her level of hostility. So why have the judge ask any questions whatsoever? Well, again, I think that goes to whether there was a basis to excuse the juror for a cause. And I think it's also important to note that this was not the reason that was given for the peremptory challenge. It was simply a concern that was expressed. The government noted that its reason for exercising the peremptory challenge was the other comment, and this was simply a concern that it had. And I note that a level of uncomfortableness with a prospective juror is a well-accepted basis for exercising a peremptory challenge. In Wade, for example, this court addressed a prospective juror who had been a passenger in a car in which the driver had been pulled over for drunk driving, and this was 10 years before that case. That passenger had been called, a prospective juror who was a passenger, had been called as a witness in a preliminary hearing and had been examined by the district attorney's office in that case. And the case was ultimately dismissed, and the prospective juror said, well, I didn't find the experience to be bad. There was no forecaused exclusion of the juror in that case, but the government nevertheless exercised a peremptory challenge and this court upheld it based upon a level of uncomfortability. Similarly, in Power, this court there addressed a juror who had recently completed long jury service, and the government explained that it excused the juror because it was uncomfortable with the idea that this juror had recently completed that jury. Now, there's really no reason to believe the person actually would, but the government was uncomfortable with that fact and exercised a peremptory challenge and this court upheld it. I think the only instance in which this court has looked at a credibility determination and found reversed really is when there's objective evidence in the record that contradicts what happened in the district court. Right, and that's why I was pushing on this question where you say the questions are asked really to address the forecaused basis, and that probably has some credibility to it. Nonetheless, the objective evidence, if you will, is she denied that they talked. That's true, but I mean, I think it would have been contrary to the record if the prosecutor after that denial had said, well, I believe that they have talked. And even then, actually, as the court has indicated, the district court still based on observing the demeanor of the witness on the stand, or excuse me, the prospective juror on the stand, and observing the demeanor of the prosecutor and observing the proceedings could have reached a contrary conclusion. I know, I understand. That's what I'm trying to sort out. I mean, this is. Well, I mean, I think the key in looking at this is under a step three Batson analysis, this court in Lewis and which this court repeated more recently in Alanis, is really the only thing that the district court has to do is make a finding of purposeful discrimination, which was done here. And again, the issue that was expressed to the district court, because the concerns that the court is raising now and the defendant raised now are not issues that were presented to the district court about why this challenge was pretextual. The issue that was presented to the district court is simply irrelevant, which is about whether this witness, prospective witness, was in fact hostile. And I think if you look at the reason that was actually given, the statement about he's not supposed to be in here, there really is no basis to question that. And the second, which wasn't really a reason, simply a level of uncomfortability about the fact that Ms. Aver and Ms. Rivera, or Ms. Herbert and Ms. Rivera had been talking to one another. I actually think it's not a little bit with defense counsel that the suggestion in the record was that they had just met immediately prior to the prosecutors entering the witness, the witness room. I think it's important to note that what she did say is that they had just met that day. And in fact, the jury selection process had been going on for a while that day. There were a number of interruptions due to the inability to get enough jurors who didn't have four cause reasons to be dismissed, and that's four cause in the sense that they had conflicts and were unable to serve. So it was a lengthy jury process that day. And the government expressed its level of uncomfortability with the fact that they had talked. This prospective juror was the only, and I'm talking about Ms. Aver, was the only prospective juror that was seen talking to Ms. Rivera. And so, therefore, a similarly situated analysis or comparison between Ms. Aver and other jurors doesn't seem to be appropriate in this circumstances. And on top of that, it's really the government's, it was the prosecutor's subjective opinion that was formed based on seeing that. And I think this Court in Alanis noted that comparative analysis really doesn't work as well when you're dealing with subjective opinions rather than objective evidence. I think also there's nothing implausible about that concern. I mean, that's another tool the Court looks at. The district court here found the explanation was reasonable, not just that it was plausible. So, I mean, I think the tools that apply to this really don't suggest reversing. And this is unlike the situation in which this Court has done so. I also want to discuss a little bit the timing because defense counsel does make a deal in his reply briefing here, an oral argument about the timing of this, the way this happened, and suggesting the mention of hostility in the look was somehow an afterthought. I think it's important. I think it goes back to this issue about the questioning really for a four-cause basis to begin with. The prosecutor up front mentioned the fact that the statement was made. He mentioned that she said he's not supposed to be in here. He didn't attach a value to the challenge. He simply asked for further questions. Further questioning was done. The preemptive challenge was exercised. And defendant raised the Madison challenge and gave his prima facie case. And at that point, the district court turned to the prosecutor and said, what's the basis for your challenge? And the prosecutor explained why, based upon that statement, he made the challenge, which was it was hostile and there was a look associated with it. I note first that that's actually the correct time that you would make those kind of explanations. It's not really an afterthought to make it at the appropriate inquiry under Step 2 of Madison. And secondly, I think given the way that this happened, and it's the perfectly natural time in which the prosecutor would explain why the statement, why he perceived it as a basis to exercise a preemptive challenge. So I really don't think there's anything about the timing of this that suggests pretext. I think at the end of the day, the district court made a credibility determination, a credibility determination based on its demeanor, based on the demeanor of the witness, excuse me, the demeanor of the prosecutor. And I think it's also important to note, the defense counsel makes a big deal about the judge wasn't there when the statement was made. But the judge was there when the prosecutor made his statements about his race-neutral reasons.  So he was able to, she was able to observe the demeanor of both the prosecutor and the witness on the stand. And she did observe the entire rest of the jury process. And there's simply no basis on this record to overturn that credibility finding. Unless the court has any further questions, the government would submit. Thank you. I think the court acted just a little too quickly here, given the circumstances of our proceedings. And counsel suggested that there was only one reason for the challenge, and that's the lie by the record. There was two. They were conversing. He was afraid of the taint. What about this? What if you were, you're the defense counsel, and you've successfully challenged a juror, a juror for cause, and that juror has been excused, that potential juror has been excused from the panel. And then you happen to be going by the witness room and you see a potential juror who's still on the panel conversing with the juror that you just got excused for cause. Would that upset you at all? Well, it was cause for concern, and you brought it up, and it warranted further questioning, which was done, and the questioning did not expose any taint. So the court's required to accept her explanation. Ms. Herbert says there's no problem. We didn't talk about her hostility at all, and so the court's bound to accept that? Not necessarily, but we're bound to accept her answers. I mean, just like during Voir Geyer, the court accepts all kinds of jurors and their answers to certain questions. But the court also is bound to make a credibility determination, isn't it? The court is bound to make a credibility determination, but in this particular case, it's hard to imagine that Ms. Herbert was not credible given her background, given the fact that she would have otherwise been a model prosecution juror. She had every quality that would have qualified her unequivocally as a prosecution juror. There wasn't one thing in her background or her profile that raised any sort of concern whatsoever. That's the backdrop to these circumstances. When you look at how she responded during Voir Geyer, she had been robbed at gunpoint. She didn't dispute what the prosecutor said, his version of events, did she? I'm sorry? Ms. Herbert didn't dispute what the prosecutor said, his version of events. In other words, I was in the witness room, and I saw the two conversing, and she said, he's not supposed to be here, and gave me a dirty look or gave me a look. When she was questioned, she didn't say, that didn't happen. That prosecutor's a liar. There was nothing like that, right? No. No, she didn't. She was not asked whether she even made the statement. She was asked if she saw the prosecutor. She said yes, and that was the end of it. The court just cut it off. And then the court said, well, I accept everything that the prosecutor said is indisputed. Well, she obviously disputed the first reason. That's obviously in the record and can't be denied. As far as the second reason, counsels – What did you say was the first reason? What's the first reason? The first reason was they were seen conversing. She was seen conversing with Rivera, and Rivera had obvious bias against law enforcement. And had been misused. Right. That was the first reason. Then there was a second reason. The first reason is debunked. Then you go to the second reason. You start looking at the second reason. You say the first reason is debunked. How is it debunked? Well, she said, we just met. There was no discussion of Mrs. Rivera's feelings or anything. Nothing was even – she mentioned nothing that would suggest that they had discussed anything regarding what Rivera had been concerned about or her feelings. But then you go to the second reason, and you look at the second reason, and counsel suggests, well, it was really a for-cause. The first reason was really just for cause. Or the second reason was for cause. Because hostility would be certainly maybe a basis of a for-cause challenge. However, if he was – if the prosecutor was concerned, that concerned, Burl wouldn't he have told the court that she was hostile initially when he said – when they had the discussion? Why did he wait until a prima facie case had been made to make that statement? That would have been the first thing out of my mouth if I was concerned about this juror. And if I wanted her dismissed for cause, for sure I would have said it right away. I think this juror should be dismissed for cause. Look at what she said. I had the impression she was hostile toward me. Okay. Thank you for the argument. The case just argued will be submitted. Appreciate counsel's argument on both sides.
judges: Fisher, Bybee, Mahan